IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE | ) |
| | ) |
| and | ) |
| | ) |
| JANE ROE, | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| SERVE:  Eugene Adams, Interim Attorney General | ) |
| for the District of Columbia | ) |
| Attorney General's Office | ) |
| 441 4th Street, N.W. | ) |
| Suite 600 | ) |
| Washington, DC 20001 | ) |
| | ) |
| The Honorable Mayor | ) |
| of the District of Columbia | ) |
| Anthony Williams | ) |
| Office of the Secretary | ) |
| 1350 Pennsylvania Ave., N.W. | ) |
| Suite 419 | ) |
| Washington, DC 20004 | ) |
| | ) |
| and | ) |
| | ) |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA, INC., | ) |
| | ) |
| SERVE:  CT Corporation System | ) |
| 1025 Vermont Ave., N.W. | ) |
| Washington, DC 20005 | ) |
| | ) |
| and | ) |
| | ) |
| ELRY MCKNIGHT, | ) |
| 3431 Stanton Road, SE | ) |
| Washington, DC 20002 | ) |

1

and                                              )
                                                 )
JOHN GANT,                                       )
          9467 Keepsake Way                      )
          Columbia, MD 21046-2017               )
                                                 )
                         Defendants.             )
                                                 )

## COMPLAINT

### Preliminary Statement

1.      Plaintiffs Jane Doe and Jane Roe, former inmates at the Correctional Treatment

Facility ("CTF") in Washington, D.C., were raped by Defendants Elry McKnight and John Gant,

respectively, who were employed at CTF as guards.  Plaintiffs bring suit alleging violations of

their constitutional rights pursuant to 42 U.S.C. § 1983, as well as negligent hiring and

supervision, negligent and intentional infliction of emotional distress, and assault and battery.

Plaintiffs bring suit against the Corrections Corporation of America ("CCA"), which operates

and manages CTF, two of its employees, Elry McKnight and John Gant, and the District of

Columbia.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction over the federal law claims pursuant

to 28 USC § 1331 and 28 USC §§ 1343(a)(3) and (a)(4).

3.      This Court has supplemental jurisdiction over District of Columbia law claims

pursuant to 28 USC § 1367.

4.      The District of Columbia was given proper notice of Ms. Doe's claims under

D.C. Code § 12-309.

5.      The District of Columbia was given proper notice of Ms. Roe's claims under D.C. Code § 12-309.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c).

**Parties**

7.      Plaintiff Jane Doe currently resides in the state of Maryland. At the time of events described in this complaint, Ms. Doe was an inmate at CTF, 1901 E Street, S.E., Washington, D.C. 20003. At all relevant times, Ms. Doe was subject to the care, custody, and control of agents of the District of Columbia and CCA. On December 1, 2006, Ms. Doe completed serving her sentence and was released.

8.      Plaintiff Jane Roe currently resides in the District of Columbia. At the time of events described in this complaint, Ms. Roe was an inmate at CTF, 1901 E Street, S.E., Washington, D.C. 20003. At all relevant times, Ms. Roe was subject to the care, custody, and control of agents of the District of Columbia and CCA. On November 10, 2006, Ms. Roe completed serving her sentence and was released.

9.      Defendant District of Columbia is a municipal corporation that acts through its agents to establish its policies and that is capable of being sued, pursuant to D.C. Code § 1-102. The District of Columbia, by and through its agents, is responsible for supervising the operation of the District of Columbia Department of Corrections ("DCDC") and ensuring the health and safety of all inmates incarcerated in DCDC facilities, including the contract facility, CTF. The District of Columbia through its agents is responsible for monitoring the facilities with which DCDC contracts for the care and custody of prisoners committed to its custody. The District of Columbia is also responsible for and has a duty to establish policies and procedures for DCDC

3

and its contracting agents, and for the training, supervision, and discipline of staff. The District of Columbia and DCDC are collectively referred to herein as "the District."

10.     Defendant CCA is a Tennessee corporation doing business in and with the District. CCA operates CTF on behalf of the District. CCA is responsible for and has a duty to establish policies and procedures for the training, supervision, and discipline of its staff and has a duty and responsibility to ensure the health and safety of the inmates incarcerated at CTF. At all times relevant to this complaint, CCA was acting under color of law in all of its activities with respect to the incarceration, care, custody, health, and safety of the Plaintiffs, Ms. Doe and Ms. Roe.

11.     Defendant Elry McKnight is a resident of the District of Columbia. At all times relevant to this complaint, he was employed by CCA as a Correctional Officer at CTF. Defendant McKnight participated in the events giving rise to this Complaint. At all times relevant to this Complaint, Defendant McKnight acted under color of state law and within the scope of his employment.

12.     Defendant John Gant is a resident of Maryland. At all times relevant to this complaint, he was employed by CCA as a Correctional Officer at CTF. Defendant Gant participated in the events giving rise to this Complaint. At all times relevant to this Complaint, Defendant Gant acted under color of law and within the scope of his employment.

**Factual Allegations**

13.     All the facilities that make up the DCDC have long histories of employees engaging in sexual harassment, sexual assault, rape of inmates, and retaliation against those who report such violations. See, e.g., Women Prisoners of the District of Columbia Dep't. of

4

Corrections v. District of Columbia, 877 F. Supp. 634 (D.D.C. 1994), vacated in non-relevant part and remanded by 93 F.3d 910 (D.C. Cir. 1996); Daskalea v. District of Columbia, 227 F.3d 433 (D.C. Cir. 2000).

14.     Any sexual act or sexual contact between a correctional officer and an inmate in official custody is criminal rape under D.C. Code §§ 22-3013 and 22-3014.

15.     CCA is responsible for the hiring, training, and day-to-day supervision of all the employees who work at CTF.

16.     On information and belief, CCA fails to use appropriate psychological screening tools to screen potential employees so as to prevent rape, sexual misconduct, and assault by staff.

17.     The training provided to new employees concerning rape, sexual harassment, sexual contact, and assault is perfunctory, minimal, and inadequate by any measure.

18.     On information and belief, the continuing training provided to employees concerning rape, sexual harassment, sexual contact, and assault is minimal and inadequate.

19.     On information and belief, the District's and CCA's responses to previous incidents of rape, sexual harassment, sexual contact, and assault at CTF were so minimal as to create an understanding among CCA employees that rape, sexual harassment, sexual contact, and assault were not taken seriously by CCA officials.

20.     On information and belief, DCDC has been aware of CCA's apathetic conduct in addressing and preventing rape, sexual harassment, and assault of individuals in its care, but DCDC has not taken any action.

### Plaintiff Doe

21.     Ms. Doe was arrested on September 28, 2001, in New York, New York.

5

22.     Ms. Doe was transferred to the District of Columbia to await trial, and on November 20, 2001, Ms. Doe was arraigned in the United States District Court for the District of Columbia. At that time, Ms. Doe was transferred to the custody of DCDC.

23.     Upon her entry into the DCDC system, Ms. Doe was processed through intake at the DC Central Detention Facility.

24.     Ms. Doe was assigned by DCDC to be housed at CTF.

25.     CTF is operated by CCA, which, pursuant to a contract with DCDC, houses inmates who have been remanded to the custody of DCDC.

26.     Because Ms. Doe was placed in the custody of DCDC, at all relevant times the District and CCA and their officials, employees, and agents had a duty to provide for her care and to protect her safety.

27.     During the period that Ms. Doe was in the custody of DCDC, Defendant McKnight was employed by CCA as a Correctional Officer at CTF and assigned to duty in the Receiving and Discharge Unit.

28.     On information and belief, prior to being employed by CCA, Defendant McKnight had been employed by DCDC as a Correctional Officer.

29.     On information and belief, the District and CCA knew or reasonably should have known of official and unofficial complaints of serious misconduct on the part of Defendant McKnight.

30.     On information and belief, CCA did not inquire about or properly consider those prior complaints when hiring Defendant McKnight to be a Correctional Officer for CCA.

31.    It was the custom, pattern, policy, and practice of DCDC and CCA to allow situations in which male guards had unsupervised access to female prisoners.

32.    During the period of his employment, Defendant McKnight had criminal sexual relations with several female prisoners at CTF.

33.    On March 28, 2002, Ms. Doe returned to CTF from a court appearance and was processed through the Receiving and Discharge unit at CTF. Defendant McKnight escorted Ms. Doe back to her housing unit alone. On the way, Defendant McKnight asked if Ms. Doe knew how to keep a secret. Defendant McKnight said he wanted to touch Ms. Doe in a sexual manner. Ms. Doe rebuffed these sexual advances and rushed to her housing unit in order to end the encounter with Defendant McKnight.

34.    On April 9, 2002, Ms. Doe had another court hearing. She returned to CTF after 4:30 p.m. Again, Defendant McKnight escorted Ms. Doe to her unit alone. Defendant McKnight told Ms. Doe that he wanted to have sex with her. He took her to a staff bathroom and blocked her exit. Defendant McKnight pulled his pants down and ordered Ms. Doe to perform oral sex on him. Then he ordered her to lie down on the floor and proceeded to rape her vaginally. When he finished raping and sodomizing Ms. Doe, Defendant McKnight ordered her to get dressed and took her back to her unit.

35.    During the assault, Defendant McKnight wore a condom, which he subsequently flushed down the toilet.

36.    The next week, a CTF staff member called Ms. Doe's housing unit and said Ms. Doe had a package delivered, and she needed to pick it up.

37.    Defendant McKnight appeared alone to escort Ms. Doe to pick up her package.

7

38.     Defendant McKnight took Ms. Doe from her housing unit to another room and made a duplicate identification badge for her. He told her that she should tell anyone who asked that the reason she was taken from her unit was to get a new ID badge.

39.     Defendant McKnight then took Ms. Doe to the same bathroom where he raped her before, and again ordered her to have oral sex and vaginal intercourse with him. Defendant McKnight raped and sodomized Ms. Doe.

40.     Again, Defendant McKnight wore a condom during the rape and flushed it down the toilet afterwards.

41.     After the rape, while Defendant McKnight was getting dressed, another officer called and asked if Defendant McKnight had taken Ms. Doe to get her package. Defendant McKnight replied that he had taken Ms. Doe to get the package, and he ordered Ms. Doe to remain quiet.

42.     Defendant McKnight then escorted Ms. Doe back to her housing unit by way of the medical unit.

43.     On April 18, 2002, Ms. Doe had a court date. She returned to CTF in the company of other inmates and CTF staff. Once again, Defendant McKnight attempted to touch Ms. Doe in a sexual manner, but because there were other people around, Ms. Doe was able to fend off another attack.

44.     Over the subsequent several weeks, Ms. Doe began having panic attacks due to the trauma of being raped and sodomized. She experienced feelings of great fear, hyperventilation, shortness of breath, and chest pain. Ms. Doe was concerned that something was wrong with her heart, and she requested a medical examination.

8

45.     The medical evaluation did not reveal any cardiac abnormalities. The medical staff diagnosed Ms. Doe as having panic attacks and referred her to psychological services.

46.     On or about May 23, 2002, Ms. Doe saw a psychological services staff member. She was not offered any therapy or any examination into the possible causes of her panic attacks, but was only offered sleeping medications.

47.     On or about May 31, 2002, Ms. Doe confided in Correctional Officer Scott, a woman who was an officer on her unit, that she had been raped by a guard and that the rapes were the reason she was having panic attacks.

48.     On May 31, 2002, Correctional Officer Scott filed a CCA "Incident Statement," where she described her conversation with Ms. Doe. Officer Scott reported that Ms. Doe began to get upset and was crying while she recounted how Defendant McKnight raped her on several occasions.

49.     Correctional Officer Scott also reported that Ms. Doe stated that she feared for her safety if her report about the rapes was not kept confidential.

50.     Correctional Officer Scott immediately took Ms. Doe to see the CTF Warden, Fred Figueroa, to report the rapes.

51.     Ms. Doe asked the CTF staff to notify the Metropolitan Police Department about the rapes.

52.     On June 4, 2002, Defendant McKnight was suspended from CTF with pay during the pendency of an internal investigation into the rapes.

53.     On or about June 7, 2002, Ms. Doe had not been informed of any progress in the investigation of the rapes or of any plans for treatment for her.

9

54.     Having received no information that the police had been called to investigate the rapes, Ms. Doe twice called the District's 911 system (the Emergency Telephone System) to attempt to report the rapes.

55.     After several days, Ms. Doe still had not been notified of any criminal investigation into the rapes or forthcoming medical or psychological treatment. Ms. Doe called the Metropolitan Police Department and asked to speak to a supervisor about the rapes. The supervisor said that a detective would come to CTF and interview Ms. Doe, but no one came.

56.     Ms. Doe made multiple requests for a rape exam and a sexually transmitted infection evaluation.

57.     Ms. Doe continued to seek assistance in getting an official response to her report of the rapes. On June 21, 2002, she informed her sentencing judge that she had been raped by a guard at CTF.

58.     On July 3, 2002, Ms. Doe was informed by CTF Warden Fred Figueroa that the CCA internal investigation into her rape had been closed.

59.     A CCA internal memorandum submitted to Warden Figueroa dated July 3, 2002, recommended that Defendant McKnight be returned to work in his previous capacity without prejudice.

60.     On or about July 4, 2002, Ms. Doe was asked to sign a statement that she had attended a training class on the types of behavior that constitute sexual misconduct. Ms. Doe never attended any such class, and therefore she refused to sign the statement.

10

61.     A telephone number for the DCDC sexual misconduct hotline was posted in Ms. Doe's housing until on or about July 4, 2002, approximately three months after Ms. Doe was first raped by Defendant McKnight.

62.     Only in August 2002 was Ms. Doe given an explanation of what constitutes sexual misconduct and the policies against such conduct in the District of Columbia.

63.     On information and belief, Defendant McKnight was terminated by CTF only when he was indicted for smuggling contraband to a female inmate at CTF in November 2002.

64.     Ms. Doe was physically and emotionally traumatized by the repeated rapes, sodomy, and sexual assaults by the CCA Correctional Officer, and she continues to suffer the emotional, psychological, and physical effects of the rapes and assaults to this day.

### Plaintiff Roe

65.     On December 25, 2003, at approximately 11:30 a.m., Ms. Roe was in her housing unit at CTF.  When Defendant Gant came in to bring the lunch trays, he asked Ms. Rogers, the Correctional Officer on duty in the unit, to allow Ms. Roe to speak to him alone in the hallway.

66.     On information and belief, the staff at CTF are not trained to be alert to signs of sexual misconduct such as this, where male staff remove female inmates to unsupervised areas of the facility.

67.     Ms. Rogers, the Correctional Officer on duty, did not question this request and allowed Defendant Gant to take Ms. Roe into the hallway alone.

68.    When Defendant Gant and Ms. Roe were alone in the hallway, Defendant Gant asked Ms. Roe for her name, address, and telephone number. Defendant Gant also told Ms. Roe she had a nice body.

69.    The conversation in the hallway lasted approximately ten minutes. Defendant Gant left the area when a lookout alerted him that someone was approaching the housing unit door.

70.    When Defendant Gant returned to the unit approximately one hour later, he again asked Ms. Rogers, the Correctional Officer on duty, to allow Ms. Roe into the hallway alone with him.

71.    Defendant Gant used his keys to try to open various doors along the hallway until he found a lock he could open. Defendant Gant opened the door to a small room that was used as a broom closet.

72.    Defendant Gant threatened Ms. Roe by telling her that because he worked in the CTF records department, he had the ability to erase the records of her jail credit. Without that credit, Ms. Roe's incarceration at CTF would be extended by more than seventy (70) days.

73.    Defendant Gant took Ms. Roe into the broom closet, pulled out his penis, and told Ms. Roe to pull down her pants and shake her buttocks for him. Defendant Gant touched Ms. Roe's breasts and buttocks, pushed Ms. Roe to her knees, and forced her to perform oral sex on him. He then ejaculated on Ms. Roe and on the floor.

74.    After the assault, Ms. Roe dressed and returned to her housing unit.

75.    Ms. Roe reported the rape shortly after the incident. She subsequently called the DCDC sexual misconduct hotline on December 30, 2003.

12

76.    CTF internal affairs then began an investigation.

77.    Ms. Roe's rape and the subsequent investigation did not remain confidential and became the subject of rumors among the staff at CCA.

78.    The only protection Ms. Roe was offered was "protective custody," which is essentially solitary confinement where she would have been locked in her cell at least twenty-three (23) hours per day and denied many privileges available to inmates held in general population. Moreover, even in protective custody, CCA staff would still have had access to her. Ms. Roe refused these punitive conditions.

79.    On January 3, 2004, Defendant Gant was suspended from work at CTF, but allowed to continue receiving full pay.

80.    On January 3, 2004, several correctional officers came to Ms. Roe's unit looking for the inmate who reported Defendant Gant for rape, sodomy, and sexual misconduct. Ms. Roe was frightened and upset by the fact that the rape and assault were clearly common knowledge.

81.    On January 16, 2004, Ms. Roe was released from CTF.

82.    Four days later, Ms. Roe called to inquire about the status of the investigation into her rape and assault.

83.    During that conversation, Mr. Don Paul, Internal Affairs Investigator for CTF, deliberately misinformed Ms. Roe that a third party was not permitted to remain on the telephone. As a result, Ms. Roe's mother, whom Ms. Roe wished to be on the telephone, was prevented from participating in the conversation regarding the rape, sodomy, and sexual assault.

84.     On January 23, 2004, Defendant Gant chose to resign from CCA rather than give a statement regarding the rape and sexual assault he perpetrated against Ms. Roe.

85.     On March 15, 2004, Warden Fred Figueroa, the warden at CTF at that time, issued a notice to Ms. Roe that her complaint of sexual misconduct was "sustained," but since Defendant Gant had resigned, no further action would be taken.

86.     On information and belief, CCA conducted no follow-up training with its employees and agents to prevent future incidents of rape, sexual assault, and harassment.

87.     On information and belief, CCA did not take reasonable steps to protect the confidentiality of Ms. Roe.

88.     On information and belief, CCA made no effort to improve the supervision of its staff.

89.     Neither DCDC nor CCA made any attempt to transfer Ms. Roe to another facility.

90.     DCDC and CCA did not apologize to Ms. Roe.  DCDC and CCA did not repudiate Defendant Gant's conduct.

91.     On information and belief, DCDC was notified about Ms. Roe's rape but made no effort to improve the supervision of its agents or conduct any follow-up training with its employees and agents to prevent future incidents of rape, sexual assault, and harassment.

92.     Ms. Roe continues to suffer the emotional, psychological, and physical effects of the rape, sodomy, and sexual assault to this day.

14

## LEGAL CLAIMS

### COUNT I
### Violation of the Fourth, Fifth, Eighth, and Ninth Amendments to the United States Constitution as Compensable by the Civil Rights Act of 1871, 42 U.S.C. § 1983
### (Against Defendants McKnight, Gant, Corrections Corporation of America, and District of Columbia)

93.     Ms. Doe and Ms. Roe incorporate by reference each of the allegations stated in paragraphs 1 through 92 as though fully restated herein.

94.     Defendant McKnight, in raping, sodomozing, and assaulting Ms. Doe, and Defendant Gant, in raping, sodomozing, and assaulting Ms. Roe, invaded Plaintiffs' rights in a deliberate, willful, malicious, and outrageous manner that shocks the conscience.

95.     Defendants McKnight and Gant acted under color of state law.

96.     Defendants' rapes and sexual assaults of Plaintiffs constituted cruel and unusual punishment and intentional, unnecessary, and wanton infliction of pain in violation of the Eighth and Ninth Amendments of the United States Constitution.

97.     The deprivations of Plaintiffs' rights described herein are not reasonably related to the furtherance of any legitimate interest in security or any other legitimate interest.

98.     Defendants McKnight and Gant deprived Plaintiffs of liberty without due process of law in violation of the Fifth Amendment of the United States Constitution.

99.     As a direct and proximate result of Defendants McKnight's and Gant's unlawful and malicious rapes and sexual assaults, Plaintiffs were deprived of their rights to be secure in their persons against unreasonable seizure of their persons, in violation of the Fourth Amendment of the United States Constitution.

15

100.    CCA, as Defendants McKnight's and Gant's private employer, is liable for the wrongdoings of its employees.

101.    The District's duty to provide constitutional treatment to people it incarcerates is a non-delegable duty. The District is, therefore, liable for the constitutional wrongdoings of its contractors, including CCA.

102.    As a direct and proximate result of the actions of Defendants McKnight, Gant, CCA, and the District of Columbia, Plaintiffs endured humiliation, physical injury, severe emotional distress, psychic trauma, and other injuries.

103.    The actions of Defendants McKnight and Gant were willful, wanton, malicious, and oppressive. Their actions were motivated by an evil intent and show a callous disregard for the rights of Ms. Doe and Ms. Roe, thus entitling Ms. Doe and Ms. Roe to an award of punitive damages.

## COUNT II
### Violation of the Fourth, Fifth, Eighth, and Ninth Amendments to the United States Constitution as Compensible by the Civil Rights Act of 1871, 42 U.S.C. § 1983
**(Against Defendants District of Columbia and Corrections Corporation of America)**

104.    Ms. Doe and Ms. Roe incorporate by reference each of the allegations stated in paragraphs 1 through 103 as though fully restated herein.

105.    The District and CCA each violated their respective constitutional duties to Plaintiffs by adopting a policy, custom, pattern, or practice of allowing male guards unsupervised access to female inmates and negligently hiring, supervising, training, and monitoring employees and agents.

106.    Prior to the incidents involving Ms. Doe and Ms. Roe, the District and CCA had learned of several previous incidents of staff rape and sexual misconduct against female inmates

16

at the facilities that make up the DCDC. The District and CCA took no reasonable actions to train, supervise, or monitor correctional officers to prevent them from repeating such incidents, and the District and CCA failed to alter policies, practices, and procedures at CTF to prevent male staff unsupervised access to female inmates. The District's and CCA's failures to act to prevent repeated incidents tacitly authorized the conduct. If the District and CCA had taken such remedial action after the rapes and sexual assaults of prior inmates occurred, the rapes and sexual assaults Plaintiffs complain of here would not have occurred.

107.    The conduct of the District and CCA was attributable to a final policymaker or amounted to a policy or custom that directly and proximately caused the violations of Plaintiffs' constitutional rights and caused Plaintiffs to suffer injuries.

108.    At all times relevant to this complaint, McKnight and Gant, as correctional officers at CCA, were acting under the direction and control of the District and CCA, and were acting pursuant to the policies, practice, and customs of the District and CCA.

109.    Acting under color of law and pursuant to official policy, practice, or custom, the District and CCA negligently hired McKnight and Gant and intentionally, knowingly, recklessly, and negligently failed to instruct, train, and supervise McKnight and Gant on a continuing basis.

110.    The District and CCA knew or should have known that the wrongs complained of were reasonably likely to be committed. The District and CCA had the power to prevent the commission of these wrongs, could have done so by reasonable diligence, and intentionally, knowingly, recklessly, or negligently failed to do so.

17

111.    The conduct of the District and CCA amounted to deliberate indifference to the

Fourth, Fifth, Eighth, and Ninth Amendment rights of Ms. Doe and Ms. Roe.

112.    As a direct and proximate result of the actions of the District and CCA, Ms. Doe

and Ms. Roe endured humiliation, physical injury, severe emotional distress, psychic trauma, and

other injuries.

113.    The actions and omissions of the District and CCA were undertaken with evil

motive, actual malice, or in willful, wanton, callous, or malicious disregard of Plaintiffs' rights

and were outrageous or reckless, thus entitling Plaintiffs to punitive damages.

### COUNT III
#### Negligent Supervision and Hiring
#### (Against Defendants District of Columbia and Corrections Corporation of America)

114.    Ms. Doe and Ms. Roe incorporate by reference each of the allegations stated in

paragraphs 1 through 113 as though fully restated herein.

115.    Pursuant to D.C. Code § 24-211.02 and common law, defendants, and each of

them, owed Ms. Doe and Ms. Roe, inmates in their custody, a duty to provide properly hired,

sufficiently trained staff and supervised and correctional officers at CTF to prevent harm and

injury to inmates.

116.    The District and CCA breached their duties by failing to make sufficient

inquiries and determinations in the hiring of McKnight and Gant and by failing to train and

supervise properly McKnight and Gant.

117.    As a direct and foreseeable result of the negligent hiring, training, and

supervision, Ms. Doe and Ms. Roe endured humiliation, physical injury, severe emotional

distress, psychological trauma, and other injuries.

18

118.    The acts of the District and CCA as set forth above were intentional, wanton, malicious, and oppressive, thus entitling Plaintiffs to an award of punitive damages.

## COUNT IV
### Intentional Infliction of Emotional Distress
### (Against Defendants McKnight, Gant, and Corrections Corporation of America)

119.    Ms. Doe and Ms. Roe incorporate by reference each of the allegations stated in paragraphs 1 through 118 as though fully restated herein.

120.    Defendants McKnight's and Gant's actions constitute intentional infliction of emotional distress against Ms. Doe and Ms. Roe.

121.    Defendants McKnight and Gant acted with evil motive, deliberate violence, and in willful disregard for the rights of Ms. Doe and Ms. Roe.

122.    Defendants McKnight's and Gant's conduct was so extreme and outrageous as to intentionally and/or recklessly cause severe emotional distress to Ms. Doe and Ms. Roe.

123.    Defendant CCA's actions were reckless and/or intentional and constitute intentional infliction of emotional distress.

124.    Defendant CCA is liable also under the doctrine of respondeat superior for the actions of its employees Defendants McKnight and Gant.

125.    As a direct result of this intentional infliction of emotional distress, Ms. Doe and Ms. Roe endured humiliation, psychological injury, severe emotional distress, psychic trauma, and other injuries.

126.    The acts of Defendants McKnight, Gant, and CCA as set forth above were intentional, wanton, malicious, and oppressive, thus entitling Ms. Doe and Ms. Roe to an award of punitive damages.

## COUNT V
### Negligent Infliction of Emotional Distress
### (Against Defendants McKnight, Gant, and Corrections Corporation of America)

127.    Ms. Doe and Ms. Roe incorporate by reference each of the allegations stated in paragraphs 1 through 126 as though fully restated herein.

128.    Defendants McKnight's and Gant's actions constitute negligent infliction of emotional distress upon Ms. Doe and Ms. Roe.

129.    Defendants McKnight and Gant acted with evil motive, deliberate violence, and in willful disregard for the rights of Ms. Doe and Ms. Roe, and their actions caused Plaintiffs to fear for their own safety.

130.    Defendant CCA's actions constitute negligent infliction of emotional distress upon Ms. Doe and Ms. Roe.

131.    Defendant CCA is liable also under the doctrine of respondeat superior for the actions of its employees Defendants McKnight and Gant.

132.    As a direct result of this negligent infliction of emotional distress, Ms. Doe and Ms. Roe endured fear of further injury, humiliation, physical injury, severe emotional distress, psychological trauma, and other injuries.

133.    The acts of Defendants McKnight, Gant, and CCA as set forth above were intentional, wanton, malicious, and oppressive, thus entitling Ms. Doe and Ms. Roe to an award of punitive damages.

## COUNT VI
### Rape and Assault and Battery
### (Against Defendants McKnight, District of Columbia, and Corrections Corporation of America)

134.    Ms. Doe incorporates by reference each of the facts stated in paragraphs 1 through 133 as though fully restated herein.

135.    Defendant McKnight's actions constitute multiple rapes, assaults, and batteries.

136.    Defendant McKnight acted with evil motive, deliberate violence, and in willful disregard for the rights of Ms. Doe.

137.    Defendants the District and CCA are also liable under the doctrine of respondeat superior.

138.    As a direct result of these assaults and batteries, Ms. Doe endured humiliation, physical injury, severe emotional distress, psychological trauma, and other injuries.

## COUNT VII
### Rape and Assault and Battery
**(Against Defendants Gant, District of Columbia, and Corrections Corporation of America)**

139.    Ms. Roe incorporates by reference each of the facts stated in paragraphs 1 through 138 as though fully restated herein.

140.    Defendant Gant's actions constitute multiple rapes, assaults, and batteries.

141.    Defendant Gant acted with evil motive, deliberate violence, and in willful disregard for the rights of Ms. Roe.

142.    Defendants the District and CCA are also liable under the doctrine of respondeat superior.

143.    As a direct result of these assaults and batteries, Ms. Roe endured humiliation, physical injury, severe emotional distress, psychological trauma, and other injuries.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

1. Award Plaintiffs compensatory damages in an amount to be determined at trial;

2. Award Plaintiffs punitive damages in an amount to be determined at trial;

3. Award Plaintiffs their reasonable attorneys' fees and costs; and

4. Grant such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs, by and through undersigned counsel, respectfully demand trial by jury.

DATED: December 12, 2006                        Respectfully submitted,

*Ashley McDonald*

Thomas C. Hill (D.C. Bar #242974)
Ashley McDonald (D.C. Bar #486054)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000

Philip Fornaci (D.C. Bar #434824)
Deborah M. Golden (D.C. Bar #470578)
D.C. Prisoners' Project
Washington Lawyers' Committee for Civil Rights
        and Urban Affairs
11 Dupont Circle, Suite 400
Washington, D.C. 20036
(202) 319-1000

Attorneys for Plaintiffs Jane Doe and Jane Roe

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jane Doe & Jane Roe | District of Columbia; Corrections Corporation of America, Inc.; Elry McKnight; John Gant |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Prince George's**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Thomas C. Hill & Ashley McDonald
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W., Washington, D.C. 20037-1128  Phone: (202) 663-8000

Philip Fornaci & Deborah M. Golden
D.C. Prisoners' Project/Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, Suite 400  Phone: (202) 319-1000

CASE NUMBER   1:06CV02203

JUDGE: Ellen Segal Huvelle

DECK TYPE: Civil Rights (non-empl...)

DATE STAMP: 12/14/2006

*JURY ACTION*

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZ...
FOR PLAIN...

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(5)

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (If Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ⊙ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Plaintiffs were sexually assaulted by prison guards while they were incarcerated in the D.C. jail. Plaintiffs bring suit under 42 USC 1983.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____ Check YES only if demanded in complaint

JURY DEMAND: YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒  NO ☐  If yes, please complete related case form.

DATE 12/12/06    SIGNATURE OF ATTORNEY OF RECORD    *ashley MaDonald*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.